CRÉDITO Y AHORRO POPULAR, Plaintiff and Appellee, *v.* BLANCA MARIANI DE MOLINI ET AL., Defendants and Appellants.

No. 6394. Argued June 13, 1934.—Decided November 5, 1935.

*González Fagundo & González, Jr.,* for appellants. *F. Zapater* for appellee.

MR. JUSTICE WOLF delivered the opinion of the court.

Antonio Molini Ruiz owed $12,290.92 to the Crédito y Ahorro Popular payable in several instalments. Various

persons agreed to become sureties and with respect to the bank to be responsible to the bank *in solido*. The contract contained clauses by which the mortgage debt should become accelerated. According to the bank, these contracts did in fact become accelerated, and the court so held. Error is assigned for the curtailing of the time allowed for the original contract. The capacity of the plaintiff to sue was challenged. There was a third assignment, clearly insufficient. Similarly a fourth assignment was not complete.

Section 1096 of the Civil Code provides:

"The debtor shall lose all right to profit by the period—

"1.—If, after contracting the obligation it should appear that he is insolvent, unless he gives security for the debt.

"2.—If he does not give to the creditor the guaranties stipulated.

"3.—If by his own acts he should have reduced said guaranties after giving them, and if they disappear through a fortuitous event, unless they are immediately substituted by new ones equally safe."

■■■ The first assignment of error is as follows:

"The court erred in holding that the debtor and the sureties had forfeited the right to avail themselves of the period stipulated for the payment of the obligation."

Again, as in many other cases, we question whether the assignment is sufficiently specific.

We can not agree with the appellants that section 1096 refers to insolvency only for unsecured debts. The terms of the section may readily refer to debts partially secured or even where the creditor, although apparently secured, relied on the solvency. Similar considerations apply to the suggestion that in the present case the creditor obtained apparently good mortgages for a great part of the debt. Nor is the position affected by the fact that when paid by the debtor and another surety, the creditor granted certain releases which originally were securities.

Therefore, if insolvency were shown the debt became accelerated and the judgment should be affirmed. We shall later comment on the alleged question of insolvency.

■ Mrs. Alfonsa Bartoli agreed to insure a house included in the mortgage. She did not do so. This failure is covered by subdivision 2 of section 1096, as follows:

"The debtor shall lose all right to profit by the period—

"1.— *  *  *  *  *  *  *

"2.—If he does not give to the creditor the guaranties stipulated."

Again appellants maintain that the section relates to debts not secured and here the debt was secured. There was, as recited, a distinct promise to insure. It is true that in many mortgages there is an accelerating clause if a debtor fails to insure, but section 1096 takes the place of an express agreement. The fact that the debtor agreed to be answerable in damages was not a case of *expressio unius*.

■ In the case of Blanca Mariani, the other remaining surety, the court held the debt accelerated by the failure to record the title with the result that the mortgage could not be recorded. We hold that this failure to record her share caused a lack of security to arise. The mortgage was practically inexistent by reason of this lack.

■ As both remaining guaranties failed, the creditor had a right to collect without determining the insolvency. This condition however did appear. We agree necessarily with the appellants that the debtor had the title to various properties and equities in them, but the fact that he had property would not affect the matter of insolvency unless this alleged property was realizable. Under the Civil Code, as distinct from the bankruptcy law, insolvency would arise if the debtor could not meet his current obligations. The court and the appellee were satisfied that the charges exceeded the assets and appellants do not satisfy us to the contrary.

6

The second assignment of error is as follows:

"The court erred in holding that the 'Crédito y Ahorro Popular' had legal capacity to bring this action."

With respect thereto the appellee says:

"1.—That The People of Puerto Rico has exclusive authority to prevent, through *quo warranto,* the plaintiff from availing itself of a franchise which it does not own.

"2.—That the defendants who contracted with the plaintiff are estopped from impugning its legal capacity.

"3.—That no banking transaction done by the plaintiff is alleged in the complaint, nor is it sought to enforce any banking act or contract other than a mortgage to secure a previous debt.

"4.—That the contract in question was executed, as has been acknowledged by the defendants and appellants, before six months had elapsed from the going into effect of the Banking Act and at a time, when the plaintiff unquestionably had capacity to execute it. See the last subdivision of section 4 of Act No. 18, of 1923 (Special Session, p. 83, *infra*).

"The Banking Act does not, nor could it, prohibit the plaintiff, without encroaching upon its constitutional rights, from enforcing valid and actionable obligations contracted in its favor prior to the going into effect of the Banking Act, upon the ground that the said plaintiff can not legally operate as a bank. The filing of a complaint, the prosecution of an action is not a banking transaction. Even going so far as to maintain that the failure to reincorporate a banking institution should *ipso facto* bring about its dissolution (which is not so determined by law) the banking entity would have an action, while in liquidation, during the period of dissolution, to recover debts, to enforce any obligation to its name. The only thing it is prohibited from undertaking is new banking transactions. Such is not the case now. The Stock Company is not dissolved; its existence, its legal personality continues. It is prohibited from making new transaction of a banking nature, but not other transactions not of a banking nature even though they may be new. In our case the transaction under consideration is neither new nor a banking transaction. See sections 238 and 228 of the Code of Commerce relating to powers of Stock Companies in liquidation, which read as follows:

" 'Section 238.—In corporations in liquidation, the provisions of their by-laws shall continue to be observed in so far as regular or

special general meetings are concerned, as well as with relation to the accounts to be given of the progress of the liquidation, and to resolve upon what may be advisable for the common interests.'

" 'Section 228.—From the time an association is declared in liquidation the authority of the managing members to make new contracts and obligations shall cease, their powers being limited as liquidators to collecting the credits of the association, to extinguishing the obligations previously contracted as they fall due, and to the consummation of pending transactions.''

■ The third assignment is as follows:

"The court erred in admitting as evidence exhibits of the plaintiffs marked numbers 1, 2, 3, 4, 6, 8, 9, 10, 11, 12, 13, 14, 15, 16, 18, 20, 21, 22, and 23.''

This is definitely insufficient and need not be discussed. The fourth assignment of error reads thus:

"The court erred in allowing counsel for the Crédito y Ahorro Popular to put to witness Antonio Molini Ruiz questions tending to explain the certificates from the Treasurer of Puerto Rico submitted as exhibits, and also mortgage deed No. 97.''

The appellee says:

"The aim of section 25 of the Law of Evidence in connection with section 101 thereof is to safeguard the rights of the parties to a contract, as decided by this Hon. Supreme Court in *Marxuach* v. *Acosta*, 39 P.R.R. 872. The purpose of the above cited legal provision is to prevent that a written contract duly executed, . . . . the presumption is that such contract contains all the terms thereof and that no evidence regarding the terms of the contract can be admitted other than the terms thereof.

"The objection made by the other party to the question put to the witness was immaterial and irrelevant because the purpose of such question was to identify a piece of property mentioned in the certificate or document shown him.''

We agree with the appellee in the discussion of the second and fourth assignments of error, and the judgment appealed from should be affirmed.

Mr. Justice Hutchison concurs in the result.